FILED
2011 Aug-29 PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **DARRELL W. WEEKS,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )    Case No.: 3:10-CV-01307-RDP |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
|    **Defendant.** | ) |

**MEMORANDUM OF DECISION**

Plaintiff Darrell Weeks brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based upon a review of the record, the court finds that the decision of the Commissioner is due to be affirmed.

**I. Proceedings Below**

This action arises from Plaintiff's applications for Title II disability, DIB, and Title XVI SSI, both dated June 21, 2007, alleging disability beginning November 15, 2006. (Tr. 78-91). Plaintiff's applications were denied on August 20, 2007. (Tr. 56-65). Thereafter, on September 7, 2007, Plaintiff made a request for a hearing before an administrative law judge ("ALJ"). (Tr. 66). Plaintiff's request was granted and the ALJ conducted a hearing on September 3, 2009 in Florence, Alabama. (Tr. 24-51).

Plaintiff appeared in person at the hearing, along with counsel, witnesses Carolyn Waldrep and Michael Waldrep, the sister and brother-in-law of Plaintiff, as well as Thomas Elliot, a vocational expert ("VE"). (Tr. 26). In the ALJ's decision dated October 19, 2009, he concluded that Plaintiff's substance abuse disorders are a contributing factor material to the determination of disability, and if he would stop his substance abuse, he would not be disabled within the meaning of the Act, and therefore, not be eligible for a period of disability, DIB, or SSI. (Tr. 19). On March 17, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby making the ALJ's decision the final decision of the Commissioner, and therefore a proper subject of this court's review. 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 37 years old and possessed a college education. (Tr. 27, 29, 103). Plaintiff was previously employed by the State of Alabama as a game warden. (Tr. 30, 99). Plaintiff was involved in a car accident September 30, 1999, which he alleges was the beginning of his mental impairments. (Tr. 30, 88, 98, 169). Plaintiff alleges the limitations of bipolar disorder, a traumatic head injury, post-traumatic stress disorder, schizophrenia, schizoaffective disorder, and substance abuse. (Tr. 33, 98). Plaintiff acknowledged during the hearing a history of illicit substance abuse of cocaine and marijuana. (Tr. 32-33).

Plaintiff received psychiatric treatment from Dr. Warren Hardy Scott at Riverbend Center for Mental Health. (Tr. 44, 271-310). On May 22, 2007, records indicate that during the examination, Plaintiff reported good energy, appetite, concentration, improved sleep, and a desire to find employment. (Tr. 271). Plaintiff stated that his prescribed medication was helpful, and he was found to be euthymic, alert, oriented, and presented no issues with mania or depression. (Tr. 271). Further, Plaintiff's thoughts were logical and directed, with a congruent affect, though his

2

judgment and insight were poor. (Tr. 271). Dr. Scott found him to be without psychosis, or suicidal or homicidal ideation. (Tr. 271). Plaintiff was diagnosed as having schizoaffective disorder, polysubstance dependence in questionable partial remission, history of post-traumatic stress disorder, paranoid personality disorder, history of akathisia, and minimal pseudo-Parkinson syndrome. (Tr. 271). He was assessed as having a Global Assessment of Functioning ("GAF") score of 65. (Tr. 272). The ALJ noted that a GAF score from 61 to 70 represents mild symptoms or some difficulty in social, occupational, or school functioning, but with a generally acceptable functional level in those environments. *See* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders: DSM-IV 34 ("DSM-IV") (4th ed., text revision 2000); (Tr. 14, 33).

Plaintiff completed drug rehabilitation treatment at Sunrise Lodge on December 18, 2007 in Russellville, Alabama. (Tr. 478-79). Thereafter, in January 2008, Plaintiff began crushing his anti-depressant medication and smoking it in a pipe. (Tr. 482-84). He was admitted to Eliza Coffee Memorial Hospital behavioral health unit and discharged with a GAF score of 40 as assessed by hospital staff, and a drug screen which revealed the presence of marijuana and barbiturates. (Tr. 482-84).

Records of an assessment by Dr. Scott on February 1, 2008 indicate that Plaintiff reported feeling better, but admitted to marijuana use, though he denied attempting to get high off his medication, the use of alcohol, and the use of cocaine. (Tr. 352-53). Plaintiff was assessed a GAF score of 55, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DSM-IV 34; (Tr. 14, 352-53). On March 4, 2008, Dr. Scott completed a Medical Source Opinion Form (Mental) and indicated "extreme" limitations in all areas. (Tr. 334-35). Dr. Scott also completed a Mental Health Provider's Statement on April 4, 2008, where he indicated

"Markedly Limit" and "Unable to Perform" in nearly all areas, stating an inability to perform any of the required functions due to exacerbation of chronic symptoms. (Tr. 476-77).

Plaintiff received regular visits from his therapist in his home and reported drug compliance, but admitted to the continued, intermittent use of marijuana. (Tr. 490-581). On October 3, 2008, January 9, 2009 and April 10, 2009, Dr. Scott again assessed GAF scores of 65, with Plaintiff reporting medication compliance, and indicating that he provided care for his elderly parents. (Tr. 517-18, 551-52, 580-81). Dr. Scott completed a Medical Source Statement (Mental) on June 6, 2009, indicating "Marked" and "Extreme" limitations in all areas. (Tr. 585-87). Records indicate that Plaintiff had also received care from Dr. J. A. Tomlinson, indicating some physical and anxiety issues, but no new mental symptoms. (Tr. 592-95). A state agency medical consultant, Dr. Samuel J. Popkin, issued an opinion that Plaintiff's limitations were moderate, and that his residual functional capacity ("RFC") was subject to those limitations. (Tr. 239-56).

## II.  ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2003). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a) (2010). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b) (2010). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the

claimant cannot claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (2011) (the "Listings"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the remaining two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience, at which point the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his specific variables. 20 C.F.R. §§ 404.1520(g), 404.920(g), 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

In the present case, the ALJ determined that Plaintiff: (1) had not engaged in substantial gainful activity since the onset of his alleged disability; (2) has medically determinable impairments—namely, schizoaffective disorder, paranoid personality traits, and minimal pseudo-Parkinson syndrome due to substance abuse disorder—that more than minimally affect his ability to perform work-related activities; (3) has medically determinable impairments, including substance

abuse disorders, that meet listed impairments in the Listings; (4) has a substance abuse disorder that is a contributing factor material to the determination of disability; and (5) in ceasing his substance abuse, would still have a severe impairment, but would not have an impairment or a combination of impairments that meet or medically equal one of the listed impairments in the Listings.  (Tr. 14-16).

After consideration of the record, the ALJ determined that if Plaintiff were to stop his substance abuse, he would have a RFC to perform a full range of work at all exertion levels as defined in 20 C.F.R. 404.1567 (1980), with limitations to unskilled work involving no more than occasional contact with supervisors and coworkers, and no significant contact with the public.  (Tr. 16-18).  Based on the record and testimony of the VE, the ALJ determined that Plaintiff would not be able to perform past relevant work as a game warden, but that significant numbers of jobs exist nationally that Plaintiff would be able to perform given his RFC and non-exertional limitations.  (Tr. 18-19, 47-50).  The ALJ concluded that Plaintiff is not disabled as defined by the Act, and therefore is not entitled to a period of disability, DIB, or SSI.  (Tr. 20).

### III.  Plaintiff's Argument for Reversal

Plaintiff did not file a brief in opposition to the ALJ's decision with the court, and therefore presents no arguments for reversal of the ALJ's decision.  The only inquiry before this court is to determine if the ALJ's decision is based on substantial evidence and whether the ALJ applied appropriate legal principles.

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

At the first step of the process, as defined under 20 C.F.R. §§ 404.1520(b) and 416.920(b), the ALJ determined that Plaintiff had not engage in substantial gainful activity since November 15, 2007, as reflected in the record. At the second step, the ALJ determined that Plaintiff had medically determinable "severe" impairments in the form of schizoaffective disorder, paranoid personality traits, and minimal pseudo-Parkinson syndrome due to a substance abuse disorder. *See* 20 C.F.R.

§§ 404.1520(c), 416.920(c); (Tr. 14-15).  Additionally, the ALJ determined that Plaintiff's impairments more than minimally affected his ability to perform work-related activities.  These findings are based upon the record and the medical records contained therein, and all of the findings are supported by substantial evidence found in the record.

At the third step, the ALJ determined that these impairments met Sections 12.03, 12.06, and 12.09 of the Listings.  20 C.F.R. § 404 Subpt. P, App. 1; §§ 12.03, 12.06, 12.09; (Tr. 15).  The ALJ determined that under Section 12.03, Plaintiff satisfied paragraphs A and C because he had schizoaffective and substance abuse disorders.  *Id.* at § 12.03(A), (C).  Further, the ALJ determined that, according to the record, Plaintiff also suffered from anxiety and panic attacks, thereby meeting the requirements of Section 12.06.  *Id.* at § 12.06.  The ALJ lastly found the combination of Plaintiff's anxiety disorder with his substance abuse disorder met section 12.09 of the Listings.  *Id.* at § 12.09.

In a case where there is a disability and medical evidence of drug or alcohol addiction is present, the ALJ is required to make a determination about whether the claimant's substance abuse disorder is "a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  That is, the question is whether the claimant would be deemed disabled due to another impairment if drug use is removed from the determination process.

The ALJ found that Plaintiff's substance abuse is a contributing factor and is material to the determination of disability.  Further, the ALJ concluded that if Plaintiff stopped his substance abuse, he would have severe impairments, but would no longer be under an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 16).  The Contract with America Advancement Act of 1996 states that

8

if it is determined that a claimant's substance abuse would be a contributing factor material to the determination of disability, then the claimant will not be found to be disabled. Pub. L. No. 104-21, 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (2004)); (Def.'s Mem. 5-6). Here, the ALJ applied the proper legal standard in determining that if his substance abuse stopped, Plaintiff would no longer satisfy the requirements of Sections 12.03, 12.06, or 12.09 of the Listings. More specifically, the ALJ concluded that if Plaintiff stopped his substance abuse, he would experience only moderate difficulties with concentration, persistence, and pace, and Plaintiff would not experience episodes of decompensation. (Tr. 16-20). The ALJ reached this conclusion after reviewing Plaintiff's medical records, wherein, on numerous occasions, Plaintiff admitted to substance abuse, even after the date of his alleged onset of disability, and much of this substance abuse was corroborated by Dr. Scott. (Tr. 271-72, 348, 352-53, 366, 457, 460, 464, 467, 495, 508, 550). Further, Plaintiff and his attorney admitted to Plaintiff's substance abuse during the hearing. (Tr. 28-29, 32). Thus, the ALJ determined that Plaintiff's substance abuse was "a contributing factor material to the determination of disability," and therefore Plaintiff was not disabled, but still had severe impairments. (Tr. 16). The ALJ next considered Plaintiff's RFC in light of his severe impairments.

Before addressing the fourth step of the determination process, the ALJ found that Plaintiff had the RFC to perform unskilled work at all exertional levels with limitations on contact with supervisors, coworkers, and the public. (Tr. 19). In making this finding, the ALJ was required to engage in a familiar two-part assessment of Plaintiff's symptoms. (Tr. 17). The ALJ complied with this process. First, the ALJ determined that Plaintiff had a medically determinable mental impairment based on medical evidence. (Tr. 17). Second, the ALJ determined that Plaintiff only

had mild to moderate limitations. (Tr. 17). This determination was based on testimony given during the hearing, as well as a review of the medical and opinion evidence in accordance with 20 C.F.R. §§ 404.1529, 416.929, 404.1527, and 416.927. (Tr. 16-18).

As the ALJ noted, the record reflects that the majority of the evidence demonstrates that Plaintiff scored a GAF between 55 and 65, which suggests that he experienced only moderate limitations (assuming proper treatment and medication compliance). (Tr. 17, 457, 527, 551). Although the record contains evidence that could be viewed as inconsistent with the ALJ's finding regarding this score, the ALJ properly analyzed these issues. Indeed, the ALJ acknowledged contrary evidence in the record such as the Medical Source Opinion Form, Mental Health Provider's Statement, and Medical Source Statement from Dr. Scott, which stated that Plaintiff was under severe limitations. (Tr. 334-35, 476-77, 585-87). These statements were dated March 4, 2008, April 4, 2008, and June 6, 2009, respectively. The ALJ properly gave weight to Dr. Scott's medical evaluations which showed Plaintiff's GAF scores had been evaluated to be around 65 which demonstrated only mild to moderate limitations. However, the ALJ accorded little weight to the opinion evidence found in the Medical Source Statement, Medical Source Opinion, and Mental Health Provider's Statements, drawing into question their sincerity and the fact that they directly contradict the bulk of Dr. Scott's medical findings, especially when the opinion evidence was issued at substantially the same time as the medical evaluations. (Tr. 18).

In *Phillips v. Barnhart*, the Eleventh Circuit stated that, generally, the opinion of a treating physician "must be given substantial or considerable weight, *unless 'good cause' is shown to the contrary.*" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.)) (emphasis added). However, the *Phillips* court further stated that

"'good cause' exists when the . . . treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* In *Lewis* (the decision quoted in *Phillips*), the court stated that the ALJ must clearly articulate the reasons for affording less weight to the treating physician's opinion, and that a failure to do so constitutes reversible error. *Lewis*, 125 F.3d at 1440. Here, the ALJ properly explained why less weight was given to the opinion evidence of Dr. Scott, as he noted that the medical evaluations represented the larger portion of evidence, and were in direct contradiction to the opinion evidence. (Tr. 18). The ALJ rejected the latter and afforded more weight to the medical consultant, Dr. Popkin.

The general rule is that non-examining expert opinions should, alone, be afforded little weight and are not considered substantial evidence, especially in comparison with the treating physician's opinion. *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). However, it is important to note that in this case the non-examining expert's assessment of Plaintiff occurred in August, 2007, shortly after he filed for DIB and SSI, and before the bulk of the medical evidence pertaining to his mental condition was gleaned. (Tr. 239-52). Here, because the non-examining expert opinion is supported by the bulk of Dr. Scott's findings–and the bulk of the evidence in the record– substantial evidence exists to support the ALJ's findings and the weight he gave to the non-examining expert's opinion. For these reasons, the ALJ's rejection of Dr. Scott's opinion evidence and his crediting of the non-examining medical consultant's testimony is not improper. *See Vuxta v. Comm'r of Soc. Sec.*, 194 Fed. App'x 874, 877 (11th Cir. 2006) (requiring an ALJ to explain the weight given to the opinion of the non-examining state psychologists); *see also Osborne v. Barnhart*, 194 Fed. App'x 654, 667 (11th Cir. 2006). The ALJ properly concluded that, given the medical

evidence, opinion evidence and testimony contained in the record, Plaintiff has the ability to perform unskilled work at all exertional levels with limitations. (Tr. 17-18).

At the fourth step, the ALJ determined that Plaintiff would not be capable of performing past relevant work as a game warden, as the Dictionary of Occupational Titles #379.167-010 indicates that job requires medium exertion and is semiskilled labor. This past relevant work was precluded from Plaintiff's RFC because he is not able to perform past relevant work due to his limitations, even if his substance abuse abated. (Tr. 18).

At the fifth and final step, the ALJ found Plaintiff to be 34 years of age as of his disability onset date, which is defined as a younger individual age in the 18-49 year range. 20 C.F.R. §§ 404.1563, 416.963; (Tr. 18, 27). Plaintiff also has at least a high school education and is able to communicate in English. 20 C.F.R. §§ 404.1564, 416.964 (2011); (Tr. 18, 29). The Medical-Vocational Rules make the transferability of job skills immaterial to the determination of disability because, in Plaintiff's case, they yield a determination of "not disabled." 20 C.F.R. 404, Subpt. P, App. 2 (2008); (Tr. 18). Rather, the ALJ utilized the testimony of the VE to determine that there existed a significant number of jobs nationally that Plaintiff would be able to perform, taking into account Plaintiff's age, education, work experience, and RFC. (Tr. 19, 46-50).

The VE testified that Plaintiff would, considering his non-exertional limitations, be able to perform light unskilled work such as an assembler of small parts, a nut and bolt assembler, or sedentary unskilled work as a rotor assembler. (Tr. 19, 48). Further, the VE stated that the number of jobs available regionally would be 2,000 for each, and 200,000 or more nationally for light and unskilled jobs, and 750 jobs regionally, and 20,000 or greater nationally for sedentary unskilled jobs. (Tr. 19, 48-49). Thus, given Plaintiff's impairments, the ALJ satisfied this burden by identifying

work that exists in significant numbers nationally. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

The burden thus shifted to Plaintiff to prove that he would be unable to perform the other work proposed by the ALJ. *See Williams v. Barnhart*, 140 Fed. App'x. 932, 936 (11th Cir. 2005). Plaintiff has failed to meet this burden–no brief was filed in response to the ALJ's decision, and the record does not support such an argument, in any event.

The ALJ properly concluded that Plaintiff is not disabled within the meaning of the Act because substance abuse is a contributing factor material to the determination of disability. Thus, Plaintiff is not entitled to a period of disability, DIB, or SSI. This decision is supported by substantial evidence and the correct application of legal standards were applied.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this       29th       day of August, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE